JUL-17-2008 01:28PM  FROM-Cioppa 05-2-09         4122713530         T-041  P.003/003  F-197
                                                                              p.2

# AFFIDAVIT OF SERVICE

State of New York            County of            U.S. District Court-Southern District Court

Index Number: 08 CIV 6314
Date Filed: 7/1/2008

Plaintiff:
Scott Pontone

vs.

Defendant:
The York Group, Inc., Milso Industries Corporation, and Matthews International Corporation

For:
Clifford Chance
31 West 52nd St.
New York, NY 10019-6131

Received by Pennsylvania Professional Process Svc. to be served on MILSO INDUSTRIES, Two Northshore Center, Suite 100, Pittsburgh, PA 15212.

I, Anthony Cioppa, being duly sworn, depose and say that on the 16th day of July, 2008 at 1:34 pm, I:

Served the within named corporation by delivering a true copy of the Summons in a Civil Case, Complaint & Civil Cover Sheet with the date and hour of service endorsed thereon by me to Brian Walters as Legal Counsel of the within named corporation, in compliance with State Statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 17th day
of July, 2008 by the affiant who is personally known to
me.

NOTARY PUBLIC PA,
MAGISTERIAL DISTRICT JUDGE
MAGISTERIAL DISTRICT 05-2-09
MY COMMISSION EXPIRES ON THE
FIRST MONDAY IN JANUARY, 2012

Anthony Cioppa
Process Server

Pennsylvania Professional Process Svc.
48 W. High St.
P.O. Box 1148
Carlisle, PA 17013
(800) 883-2341
Our Job Serial Number: 2008000429
Ref: Matthews Corp.

Copyright © 1993-2008 Database Services, Inc. - Process Server's Toolbox V6.2

JUL 17,2008 13:50             4122713530                             Page 3

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT NEW YORK

| | |
|---|---|
| SCOTT PONTONE,<br><br>Plaintiff<br><br>vs.<br><br>THE YORK GROUP, INC.,<br><br>MILSO INDUSTRIES CORPORATION,<br><br>and<br><br>MATTHEWS INTERNATIONAL CORPORATION,<br><br>Defendants | Docket No.<br><br>08 CIV 6314<br>Judge Pauley<br><br>SUMMONS IN A CIVIL ACTION |

**TO:**

Milso Industries Corporation
Two NorthShore Center, Suite 100
Pittsburgh, Pennsylvania 15212

**YOU ARE HEREBY SUMMONED** and required to serve on Plaintiff's Attorney:

Edmund Aronowitz
Clifford Chance US LLP
31 W 52nd St.
New York, New York 10019

an answer to the complaint which is served on you with this summons, within **20 days** after service of this summons on you, exclusive of the day of service. If you fail to do so, default judgment will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON
_____
Clerk

_____
By Deputy Clerk

JUL 1 4 2008
_____
Date

NYA898385.1

08 CIV 6314
Judge Pauley

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT NEW YORK

| | |
|---|---|
| SCOTT PONTONE,<br><br>Plaintiff<br><br>vs.<br><br>THE YORK GROUP, INC.,<br><br>MILSO INDUSTRIES CORPORATION,<br><br>and<br><br>MATTHEWS INTERNATIONAL CORPORATION,<br><br>Defendants | Docket No.<br><br>JUL 14 2008<br>U.S.D.C. S.D. N.Y.<br>CASHIERS<br><br>VERIFIED COMPLAINT |

Plaintiff Scott Pontone, by his attorneys Clifford Chance US LLP, for his Verified Complaint, alleges as follows:

### NATURE OF THE ACTION

1. This is an action for declaratory and injunctive relief regarding the unreasonable and invalid non-competition and non-solicitation provisions of a contract between Mr. Pontone and his former employers (the "Restrictive Covenants," set forth in Paragraph 31 below).

2. The Restrictive Covenants are set forth in an agreement entered into in May 2007, upon Mr. Pontone's separation from The York Group, Inc. A true copy of that agreement (the "2007 Amendment") is attached as Exhibit A to this Verified Complaint.

3. Through the Restrictive Covenants, Defendants The York Group, Inc., Milso Industries Corporation and Matthews International Corporation are attempting to force Mr. Pontone to stay entirely out of the casket manufacturing and distribution business for three years. These three-year, global restrictions have intimidated potential business partners from entering

into new ventures with Mr. Pontone, are unreasonable and unnecessary to protect the legitimate business interests of Defendants, and are invalid under New York law.

4. One full year of the three-year period has passed. During that time, Mr. Pontone has fully complied with the Restrictive Covenants. No legitimate interest justifies forcing Mr. Pontone out of the entire casket distribution business for two additional years.

5. Through this action, Mr. Pontone seeks a declaration that the Restrictive Covenants are invalid and preliminary and permanent injunctions against their enforcement.

## THE PARTIES

6. Plaintiff Scott Pontone is a citizen of New York.

7. Defendant The York Group, Inc. ("York") is a corporation incorporated under the laws of Delaware with its principal place of business in Pittsburgh, Pennsylvania. York is a subsidiary of Defendant Matthews International Corporation.

8. Defendant Milso Industries Corporation ("MIC") is a corporation incorporated under the laws of Delaware with its principal place of business in Pittsburgh, Pennsylvania. MIC is a subsidiary of Defendant York.

9. Defendant Matthews International Corporation ("Matthews") is a corporation incorporated under the laws of Pennsylvania with its principal place of business in Pittsburgh, Pennsylvania. Matthews is a publicly-traded company with revenues in fiscal year 2007 of approximately $750 million.

## JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and because the amount in controversy exceeds $75,000.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and because the parties have by contract consented to the jurisdiction of this Court and waived any objections to venue in this judicial district.

## BACKGROUND

### I.     The Sale of Milso to York

12.     Before 2005, Milso Industries ("Milso") was a family business based in Brooklyn, New York. Milso was founded by Mr. Pontone's grandparents. Milso manufactured and sold caskets and other burial products to funeral homes. Milso is unrelated to MIC and is not a party to this litigation.

13.     Mr. Pontone and several other members of his family were the owners of Milso. Mr. Pontone was a minority shareholder of Milso.

14.     Mr. Pontone worked for Milso in sales and management roles. Several other members of Mr. Pontone's extended family also worked for Milso.

15.     Before 2005, York and Milso were competitors. On or about May 28, 2005, York and Matthews purchased Milso. In connection with that purchase, Mr. Pontone became the Executive Vice President of the Casket Division of York. Mr. Pontone's father, Harry Pontone, became President of York.

16.     In connection with the purchase of Milso, York and Matthews entered into an Asset Purchase Agreement (the "APA") and several other agreements with Milso and certain affiliates and shareholders of Milso, including Mr. Pontone. York and Mr. Pontone also entered into an employment agreement (the "2005 Employment Agreement"). A true copy of the 2005 Employment Agreement is attached as Exhibit B to this Complaint. A true copy of the APA is attached as Exhibit C to this Complaint.

17. Under the APA, York agreed to buy Milso's casket manufacturing business. The APA and other agreements entered into in connection with the transaction also provided for contingent payments and bonuses to be paid to the shareholders of Milso (including Mr. Pontone) upon certain conditions.

18. Under the 2005 Employment Agreement, Mr. Pontone became an employee of York. Mr. Pontone's term of employment was to continue until September 30, 2010, subject to certain early termination provisions. The 2005 Employment Agreement also provided that Mr. Pontone would automatically succeed his father when his father ceased to be President of York.

19. The APA and the 2005 Employment Agreement contained restrictive covenants. Both agreements included restrictions on competition. The 2005 Employment Agreement included restrictions on soliciting customers.

20. The APA and other agreements entered into in connection with the sale of Milso's business to York provided that the President of York would have substantial autonomy and control over York's operations. Mr. Pontone's father wanted control over York's business because bonuses and contingent payments depended upon the performance of York.

## II. The Transition of Milso's Relationships to York

21. Before the sale of Milso, Mr. Pontone conducted sales and marketing activities for Milso. In that capacity, he had primary responsibility for 30-40 customer accounts, all of which were located in the New York City metropolitan area.

22. After the sale of Milso, Mr. Pontone's role with York was exclusively managerial. Specifically, Mr. Pontone was Executive Vice President of the Casket Division of York and had supervisory responsibility for York's sales, distribution and marketing functions.

23. Mr. Pontone did not have primary responsibility for any customer accounts during his employment with York. Mr. Pontone transferred all of the customer accounts for which he had been responsible before the acquisition to sales employees of York.

24. Following the sale to York, Mr. Pontone and his father worked diligently and in good faith to integrate Milso's operations into York's, to transfer Milso's clients and goodwill to York, and to build York's business.

### III. The Force-Out of Mr. Pontone

25. Matthews did not abide by the terms of the APA, however. In particular, Matthews began increasingly to interfere in the operations of York, contrary to the control provisions bargained-for in the transaction.

26. Matthews' interference eventually became intolerable. In March 2007 Mr. Pontone and his father sued York for breach of their employment agreements, seeking among other things the contingent payments provided for under acceleration clauses of the APA and their employment agreements.

27. Two months later, in May 2007, Mr. Pontone and his father settled their lawsuit with York. The terms of the settlement were set forth in a series of agreements executed on or about May 30, 2007. These agreements included the 2007 Amendment.

28. The principal provisions of the settlement required Mr. Pontone to leave York, by resigning his employment position and relinquishing his right to succeed his father as President of York. In exchange for those substantial concessions, Mr. Pontone was to receive severance compensation of $300,000 per year for three years, paid in installments (the "Severance Payments").

29. The purpose of the Severance Payments was to compensate Mr. Pontone for his relinquishment of his substantial employment rights. No part of the Severance Payments is

related to the Restrictive Covenants. Indeed, Matthews agreed to the Severance Payments only after Mr. Pontone's father agreed to give up his right to a $300,000 per year bonus to which he otherwise would have been entitled under his employment agreement.

## IV.   The Restrictive Covenants

30.   The 2007 Amendment deleted the "Restrictions on Competition" and "Non-Solicitation of Customers and Suppliers" sections of the 2005 Employment Agreement and the corresponding provisions of the APA.

31.   The 2007 Amendment set forth the following new anti-competition and anti-solicitation provisions:

> 4.06. <u>Restrictions on Competition</u>. Employee covenants and agrees that during the period of Employee's employment hereunder and for three (3) years following the effective date of Employee's resignation from the Company, Employee shall not engage, directly or indirectly, whether as principal or as agent, officer, director, employee consultant, shareholder, investor, financer or otherwise, alone or in association with any other person, corporation, or other entity in the manufacture, marketing or sale of caskets or any other product of the type presently manufactured, marketed or sold by The York Group, Inc. or [MIC]. Notwithstanding the restrictions in this paragraph, Employee may own, directly or indirectly, solely as an investment, (A) securities of any such entity which are traded on any national securities exchange or NASDAQ if Employee (y) is not a controlling person or a member of a group which controls such entity; and (z) does not directly or indirectly own 2% or more of any class of securities of such entity or (B) interests in mutual funds or similar pooled accounts.
>
> . . .
>
> 4.07. <u>Non-Solicitation of Customers and Suppliers</u>. Employee covenants and agrees that during the period of Employee's employment hereunder and for three (3) years following the effective date of Employee's resignation from the Company, Employee shall not directly or indirectly solicit the trade of, or trade with, any customer of The York Group, Inc. or [MIC] with respect to the manufacture, marketing or sale of caskets or any other product of the type presently manufactured, marketed or sold by The York Group, Inc. or [MIC].

(the "<u>Restrictive Covenants</u>").

32. The Restrictive Covenants on their face impose a three-year ban on Mr. Pontone's participation in the casket manufacturing and distribution industry, without regard to geography.

33. The Restrictive Covenants are unreasonable and unnecessary to protect any legitimate business interest of York, MIC or Matthews.

34. At the time of his separation, Mr. Pontone possessed no trade secrets or confidential information of York, MIC, or Matthews that are protected by the Restrictive Covenants. Nor was Mr. Pontone responsible for any client relationships, as he had transferred all client responsibility to York employees at the time of the acquisition of Milso.

35. York's and MIC's actual and potential clients are not secret and are easy to identify. York's and MIC's clients are operators of licensed funeral homes. Those customers can be found in the classified listings of any telephone directory. They also can be found in industry publications such as the American Blue Book of Funeral Directors. In addition, two funeral directory industry associations, the National Funeral Directors Association ("NFDA") and the International Cemetery and Funeral Association, publish membership information that is available on the Internet.

36. Mr. Pontone was reluctant to agree to the Restrictive Covenants, because he believed them to be unreasonable and unfair. Rather than continue litigating against a public company with substantial resources, however, he ultimately acquiesced and agreed to the 2007 Amendment as a whole.

**V. Mr. Pontone's Compliance with the Restrictive Covenants for More Than a Year**

37. As of May 30, 2007, Mr. Pontone no longer was employed by York, MIC or Matthews.

38. Between May 30, 2007, and the date of the filing of this Complaint, Mr. Pontone has fully complied with the Restrictive Covenants.

7

39. Since January 2008, Mr. Pontone has begun to build a business that offers insurance products to funeral home operators. To market these insurance products, Mr. Pontone has engaged an independent sales force of eight people. Seven of these salespersons never worked for Milso, MIC or York. The eighth had left York to work for a third party before he began working for Mr. Pontone.

40. Since Mr. Pontone resigned from York, several manufacturers and distributors of burial caskets have approached him about the possibility of engaging in new ventures to market and sell caskets using the same sales force he uses to offer insurance products ("Proposed Ventures"). The Proposed Ventures include possible sales activity in states in which York conducts direct sales activities as well as states in which York has no direct selling activity.

41. Out of good faith and caution, Mr. Pontone has informed these potential business partners of the Restrictive Covenants. The prospective partners have stated that they would proceed with the Proposed Ventures only if they could be assured that the Restrictive Covenants will not apply.

42. By preventing Mr. Pontone from participating in the Proposed Ventures, the Restrictive Covenants are causing Mr. Pontone substantial and irreparable harm. Mr. Pontone cannot expand the range of products available for sale to include caskets.

43. A combined insurance and casket line of products would be substantially more attractive to customers and more profitable to Mr. Pontone than the insurance products alone. By excluding Mr. Pontone from the casket business, the Restrictive Covenants are causing him a loss of profit that is difficult to quantify, but that is far greater than $75,000.

44. By excluding Mr. Pontone from the casket business, the Restrictive Covenants are limiting Mr. Pontone's ability to attract more and better salespeople, further limiting his ability to build his business and increase profits.

45. The Restrictive Covenants also are injuring third parties. Mr. Pontone's current salespeople are losing opportunities to enhance their earnings. And customers and potential customers in the funeral home industry are deprived of the benefits of marketplace competition and innovation.

46. If Mr. Pontone engages in the Proposed Ventures, Defendants are likely to attempt to enforce the Restrictive Covenants and to cease making the Severance Payments.

**COUNT 1**
**(Declaratory Judgment)**

47. Plaintiff repeats and realleges Paragraphs 1 to 46 as if set forth here in full.

48. The Restrictive Covenants are unreasonable and unnecessary to protect the legitimate business interests of York, MIC or Matthews.

49. Defendants have no legitimate interest in being broadly protected from competition by Mr. Pontone or the solicitation of their customers by Mr. Pontone.

50. Even if Defendants had legitimate interests in May 2007 that merited protection through restrictive covenants, the Restrictive Covenants are unreasonable because they impose greater restraints than are required for the protection of Defendants' legitimate interests, are unreasonable in temporal and geographic scope, impose an undue hardship on Mr. Pontone, and are injurious to the public.

51. Mr. Pontone is in reasonable fear and apprehension that if he were to engage in one or more of the Proposed Ventures, Defendants would subject him to a meritless lawsuit and cease making the Severance Payments.

52. Mr. Pontone believes it likely that, upon learning of this Complaint, Defendants improperly will seek to penalize him by halting the Severance Payments due to him under the 2007 Amendment in breach of their obligations.

53. Wherefore, Mr. Pontone requests this Court to order a speedy hearing and to enter a Declaratory Judgment declaring the Restrictive Covenants invalid and unenforceable and declaring the unpaid balance of the Severance Payments provided for in the 2007 Amendment be paid in full at the times and in the manner provided in the 2007 Amendment.

## COUNT 2
### (Preliminary and Permanent Injunctive Relief)

54. Plaintiff repeats and realleges Paragraphs 1 to 52 as if set forth here in full.

55. Absent preliminary and permanent injunctive relief, Mr. Pontone will suffer irreparable harm as a result of his inability to pursue one or more of the Proposed Ventures.

56. Mr. Pontone does not have an adequate remedy at law. Because of the nature of Mr. Pontone's lost opportunity should an injunction not issue, it will be difficult or impossible for Mr. Pontone to determine, or therefore, to prove, the precise amount of damages he may suffer.

57. Wherefore, Mr. Pontone requests this Court to enter preliminary and permanent injunctions preventing and restraining the Defendants and all persons acting on their behalf from (a) seeking to enforce or threatening to enforce the Restrictive Covenants, (b) asserting or implying to third parties that by employing or otherwise engaging in business with Mr. Pontone those third parties may be procuring or facilitating a breach of the Restrictive Covenants, and (c) interrupting or ceasing the Severance Payments.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Pontone requests that this Court grant judgment in his favor as follows:

a. A Declaration that the Restrictive Covenants are invalid and unenforceable;

b. A Declaration that the unpaid balance of the Severance Payments provided for in the 2007 Amendment is payable in full at the times and in the manner provided in the 2007 Amendment;

c. Preliminary and Permanent Injunctions preventing and restraining the Defendants and all persons acting on their behalf from (a) seeking to enforce or threatening to enforce the Restrictive Covenants, (b) asserting or implying to third parties that by employing or otherwise engaging in business with Mr. Pontone those third parties may be procuring or facilitating a breach of the Restrictive Covenants, and (c) interrupting or ceasing the Severance Payments;

d. Costs of this suit; and

e. Such other and further relief, including all other available monetary and equitable relief, as the case may require and the Court may deem just and proper.

Dated: New York, New York
       July 14, 2008

Respectfully submitted,

_____
Edmund Aronowitz (EA 0542)
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York  10019
Tel.:  212-878-8000
Fax:   212-878-8375
*Attorney for Plaintiff*
*Scott Pontone*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746 and Local Rule 1.10, I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 14, 2008.

Scott Pontone